```
                     UNITED STATES DISTRICT COURT

                    NORTHERN DISTRICT OF MISSISSIPPI


UNITED STATES OF AMERICA,      )
                               )
         Plaintiff,            )           CASE NO. 3:15CR48
                               )
            vs.                )
                               )
TIMOTHY AUBRY,                 )
                               )
         Defendant.            )


      SENTENCING AS TO COUNTS 1 AND 2 OF THE INDICTMENT
             BEFORE DISTRICT JUDGE MICHAEL P. MILLS
           TUESDAY, JANUARY 31, 2017; 11:40 A.M.
                      OXFORD, MISSISSIPPI

FOR THE GOVERNMENT:

      United States Attorney's Office
      CLYDE MCGEE, ESQ.
      900 Jefferson Avenue
      Oxford, Mississippi  38655-3608


FOR THE DEFENDANT:

      Farese, Farese & Farese
      TONY FARESE, ESQ.
      122 Church Street
      Post Office Box 98
      Ashland, Mississippi  38603-0098



      Proceedings recorded by mechanical stenography, transcript
produced by computer.


            RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
                  FEDERAL OFFICIAL COURT REPORTER
                911 JACKSON AVENUE EAST, SUITE 369
                     OXFORD, MISSISSIPPI 38655
```

```
 1       (CALL TO ORDER OF THE COURT)
 2            THE COURT:  Mrs. Pennebaker, would you call the
 3  docket.
 4            THE COURTROOM DEPUTY:  Court calls Cause No.
 5  3:15CR48, United States of America v. Timothy Aubry.  This is a
 6  sentencing as to Counts 1 and 2 of the indictment.
 7            THE COURT:  All right.
 8       Who do we have from the Government?
 9            MR. MCGEE:  Clyde McGee, Your Honor.
10            THE COURT:  And for the defense?
11            MR. FARESE:  Tony Farese from Ashland, Judge.
12            THE COURT:  And do you have your client with you
13  today?
14            MR. FARESE:  We do.  We have Mr. Timothy Aubry
15  originally from Beaumont, Texas staying by way of Mason,
16  Tennessee.
17            THE COURT:  All right.  And do we have anyone from
18  chambers?  I don't see my clerks.
19       Anyone from probation?
20            MR. COLE:  Yes, Your Honor, Brandon Cole.
21            MS. HATTER:  Kimberlee Hatter, Your Honor.
22            THE COURT:  Glad to have both of you.
23       Before we proceed, Mr. Farese, have you reviewed the
24  Presentence Report with your client?
25            MR. FARESE:  I have, Your Honor.
```

1          THE COURT:  And do you have any unresolved

2 objections?

3          MR. FARESE:  We do, Your Honor.

4          THE COURT:  And what are your objections?

5          MR. FARESE:  Your Honor, if we could go through the

6 addendum, we think those are properly listed and outlined by

7 Mr. Cole.  We respectfully disagree with his responses, but we

8 think he's properly outlined those.

9          THE COURT:  All right.  Your first objection is --

10         MR. FARESE:  We maintain, Your Honor, under

11 Paragraphs 23 and 24, that we should be held accountable for at

12 least 3.5 kilos but less than 5 kilos of cocaine hydrochloride.

13         THE COURT:  All right.  And what is the Government's

14 response?

15         MR. MCGEE:  Your Honor, the Government would agree

16 with that.

17         THE COURT:  You would agree?

18         MR. MCGEE:  Yes.

19         THE COURT:  You agree with Mr. Farese's --

20         MR. MCGEE:  With Mr. Farese, yes, Your Honor.

21         THE COURT:  All right.

22     Well, I will grant that objection, Mr. Farese.  And your

23 Objection No. 2?

24         MR. FARESE:  Yes, sir, Your Honor.  We would object

25 to being assessed the 143.73 grams of cocaine hydrochloride as

1 outlined in Paragraph 25 in Beaumont, Texas. That's a pending
2 charge, and the defendant has pled not guilty. We don't think
3 we should be held accountable for that action. We think we've
4 denied it, and that should be proper rebuttal.
5     THE COURT: What's the Government's response?
6     MR. MCGEE: Your Honor, we would agree with
7 Mr. Farese's objection. The Government actually did not know
8 about that buy either; and the Government would submit that it
9 was outside of the conspiracy in Mississippi, to our knowledge.
10     THE COURT: Okay. Well, I will grant that objection.
11 Objection No. 3?
12     MR. FARESE: Your Honor, Objection No. 3 addresses
13 the conduct described in Paragraphs 26 and 27, which allegedly
14 occurred in Hammond, Louisiana. The defendant denies being a
15 part of that. That was Mr. Roger Briggs, and we don't think he
16 should be held accountable for that.
17     THE COURT: All right. What is the Government's
18 response in.
19     MR. MCGEE: The Government would agree with the
20 defendant as to Objection 3 as well.
21     THE COURT: All right. Well, that will be granted.
22 And Objection No. 4 -- my goodness, Mr. Farese.
23     MR. FARESE: Yes, sir. That's Paragraphs 28 through
24 35, Your Honor. We would object to being held responsible for
25 conduct in Rankin County that involved Candida Ocasio, and the

1  defendant denies being involved in that matter.  We don't think

2  it's relevant conduct and should not be considered in the drug

3  calculation for the defendant.

4           THE COURT:  All right.

5      What's the Government's response?

6           MR. MCGEE:  Your Honor, the Government would agree

7  with that objection as well.

8           THE COURT:  All right.  That'll be granted.

9  Objection No. 5?

10          MR. FARESE:  Yes, sir, Your Honor.  We object to the

11 conduct described in Paragraphs 36 through 59.  We maintain

12 that this defendant is not "Tweety" that's listed in a

13 superseding indictment in the Northern District of Alabama in

14 that cause number described therein.

15     The defendant, Timothy Aubry, has not been indicted by

16 name over there.  That conduct is separate and apart from this

17 conduct, and we don't think he should be held accountable for

18 that in this case.  He denies that he's participated in those

19 crimes in Alabama.

20          THE COURT:  All right.

21     What's the Government's response?

22          MR. MCGEE:  Your Honor, the Government would also

23 agree with that objection as the Government believes this

24 Mississippi conspiracy is separate from the Alabama conspiracy.

25          THE COURT:  All right.  Well, that'll be granted.

1  All right.  We got Objection 6.  The way the probation listed

2  them together, we've got 6, 8, 9, and 14.  It's an unusually

3  large number of objections, Mr. Farese.

4         MR. FARESE:  Yes, sir.  It's really not as bad as it

5  looks, Judge.

6         THE COURT:  Okay.  Well, you know, the way it looks

7  is the way it looks.

8         MR. FARESE:  Yes, sir.  It's just we're objecting to

9  everything outside of Mississippi that the probation -- I

10 thought Ms. Toya was back.

11        THE COURT:  You thought who?

12        MR. FARESE:  Ms. Brush, Toya Brush was back.

13        THE COURT:  Well, you keep digging.

14        MR. FARESE:  A little humor, Judge.

15        THE COURT:  Yeah, I understand.  What's the nature of

16 your objection?

17        MR. FARESE:  Yes, sir.  We objected to Paragraphs 65,

18 70, 74, and 106 of the Presentence Report, Your Honor.  But we

19 would state that, when we initially filed Objection 11, which

20 has been resolved, we did not think we were a career offender.

21 We maintain that our total offense level should -- will be a --

22 I think a 34, as Mr. Cole alluded.  But that, with the

23 sustained objections for that, we concede that we think it is

24 130 to 162.

25     Is that right, Mr. Cole, on the calculation?

1          MR. COLE: I'm not sure I understand that question.
2 130 to 162? Is this a guideline range?
3          MR. FARESE: Yes, sir. In your -- you had -- you had
4 stated, as a matter of clarification, since defense counsel now
5 argues the defendant is in fact a career offender, the
6 guideline custody range would be 130 to 162 months if Defense
7 Objections 6, 8, 9, and 14 are sustained.
8          THE COURT: I'm not sure if that's an objection,
9 Mr. Farese. But, when you make it an objection, I have to rule
10 on it.
11         MR. FARESE: Well, Your Honor, when we made these
12 objections, we contend he should only be accountable for 3.5 to
13 5 kilos.
14         THE COURT: Yeah. You're wanting him to reach a
15 different --
16         MR. FARESE: Calculation.
17         THE COURT: Calculation.
18         MR. FARESE: Yes, sir.
19         THE COURT: Well, I'm going grant it technically; but
20 let's move on.
21         MR. FARESE: Yes, sir.
22         THE COURT: And then Objection No. 7.
23         MR. FARESE: Yes, sir. We object to Paragraph 68 for
24 the role in the offense, Your Honor.
25         THE COURT: All right. What says the Government?

1                MR. MCGEE:   The Government -- Your Honor, the

2    Government submits that the role in the offense deals with

3    issues relating to the Alabama and the Louisiana and the Rankin

4    County, Mississippi relevant conduct that we previously

5    conceded an objection on.  So we would also agree with that

6    objection that was lodged by the defendant.

7                THE COURT:   All right.  I'm going to grant it, for

8    right now anyway.  You have resolved Objections No. 10, 11, and

9    12, apparently, Mr. Farese.

10               MR. FARESE:  Yes, sir.

11               THE COURT:   And Objection No. 13?

12               MR. FARESE:  Paragraphs 94, 95, and 96, Your Honor,

13   with regard to substance abuse.

14               THE COURT:   Yeah?

15               MR. FARESE:  We'd respectfully show that the

16   defendant has had problems with substance abuse, and we would

17   ask the Court to recommend the 500-hour intensive drug

18   treatment program.

19               THE COURT:   All right.  Well, let me tell you, that's

20   not a true objection.  And he's almost saying, no, no, no, I'm

21   not a drug abuser.  And then he's coming in and saying, but I

22   am a drug abuser because I want to get the 500-hour program.

23       So it's really something that should be requested rather

24   than objected to, in my opinion.  But -- so I'm going to deny

25   that and deal with it in the sentence.  Now, do you have any

1  other objections, Mr. Farese?

2           MR. FARESE:  No, sir, Your Honor.

3           THE COURT:  Are you wanting to go to trial?  Is that
4  what you're wanting to do?

5           MR. FARESE:  Absolutely not, Your Honor.

6           THE COURT:  All right.  Where does that leave us
7  after I've ruled on all of your objections?

8           MR. FARESE:  We're asking the Court to accept the
9  11(c)(1)(C) plea agreement.

10          THE COURT:  Okay.  Well, let's look at that.
11      Mr. Cole, after I've ruled on these matters, do you
12  have -- how does that affect the calculations as to his total
13  offense level?

14          MR. COLE:  Total offense level is going to be a 29.

15          THE COURT:  Okay.

16          MR. COLE:  But this is how it got there.

17          THE COURT:  Okay.

18          MR. COLE:  The new base offense level, based on drugs
19  attributed to the defendant of being 3.5 to 5 kilograms of
20  cocaine, base offense level is 28.  Plus two because it's a
21  1956 offense.  Gives you the total offense level of 30.
22  However, because defense counsel agrees that the defendant is a
23  career offender, then his adjusted offense level is 32, minus
24  his three points for acceptance, is how we get to a total
25  offense level of 29.

1    THE COURT:  All right.  What is his criminal history
2 category?
3    MR. COLE:  He has a criminal history category of 6
4 because he is classified as a career offender.
5    THE COURT:  The guideline range?
6    MR. COLE:  151 to 188 months.
7    THE COURT:  Okay.
8    MR. COLE:  Your Honor, also, his actual fine range --
9    THE COURT:  Okay.
10    MR. COLE:  -- is 15,000 to 1,500,000.
11    THE COURT:  All right.
12   Do you agree with that, Mr. Farese?
13    MR. FARESE:  Yes, sir.
14    THE COURT:  Are there any other objections?
15    MR. FARESE:  No, sir.
16    THE COURT:  Are you ready to proceed?
17    MR. FARESE:  We are, Your Honor.
18    THE COURT:  If you would come forward, please.
19   (PARTIES COMPLYING)
20    MR. MCGEE:  Your Honor, may I state one thing?
21    THE COURT:  You may.
22    MR. MCGEE:  I wanted to apologize to the Court for
23 walking over here and sitting down when you walked out.  My
24 mind was on something else.  I was not paying attention.  I
25 apologize.

1          THE COURT:  When did you do that?  I didn't even
2 notice it.
3          MR. MCGEE:  It was right when you walked out; I sat
4 down before we were told to sit down.  I just wanted to make
5 sure you didn't think I was meaning any disrespect.
6          THE COURT:  Well, I would say you're doing better.
7 Are you ready to proceed?
8          MR. MCGEE:  Yes, Your Honor.
9          THE COURT:  On a previous day, Mr. Aubry pled guilty
10 to Counts 1 and 2 of the indictment which charged him with
11 conspiracy to distribute, and possess with intent to
12 distribute, cocaine.
13     And then he also pled guilty to conspiracy to commit money
14 laundering.  He is now before the Court for sentencing.  And
15 before you are sentenced, Mr. Aubry, is there anything you
16 would like to say?
17          THE DEFENDANT:  Yes, sir.
18          THE COURT:  All right.
19          THE DEFENDANT:  Well, first of all, I want to
20 apologize for my actions.  I regret what I did.  And I'm sorry
21 for what I did.  And I'd like to take this time in prison to
22 try to rehabilitate myself and think over the things that I've
23 done, try to make better decisions and try to put me together a
24 plan; so, when I get out, I can be there for my kids and my
25 family.

```
 1            THE COURT:  How old are you?
 2            THE DEFENDANT:  I'm 35.
 3            THE COURT:  Okay.
 4            THE DEFENDANT:  Yes, sir.
 5            THE COURT:  Have you ever worked anywhere?
 6            THE DEFENDANT:  Yes, sir.
 7            THE COURT:  I see you worked three months with A & L
 8   Tax Office and maybe a year as a porter with CAT Hauling
 9   Service.  Do you have any other employment history?
10            THE DEFENDANT:  Yes, sir.  My father owns a lawn
11   service.
12            THE COURT:  Uh-huh?
13            THE DEFENDANT:  It's a family-owned business.  They
14   still have it now.  And I've worked with my mom doing lawn care
15   since I was a kid.  But, once I got in trouble, I went away to
16   prison.  Once I got out, I got the job as a porter.  And then I
17   got into the tax office, tax business; and I did that.
18       And I had a violation, and I had to go and do it.  So,
19   during those times, it was kind of rough for me because there
20   was incarceration in between.  So I wasn't just in society the
21   whole time.
22            THE COURT:  Uh-huh.  Anything else?
23            THE DEFENDANT:  No, sir.
24            THE COURT:  You have anything to say?
25            MR. FARESE:  I'm sorry?  I didn't hear you.
```

1        THE COURT: Did you have anything to say?

2        MR. FARESE: No, sir.

3        THE COURT: Okay.

4        THE DEFENDANT: Your Honor?

5        THE COURT: Yes?

6        THE DEFENDANT: When I first got into the situation,
7 I didn't want to speak about the drug issues that I have. I
8 didn't want to speak about it because I didn't want to make my
9 situation worse than what it already was, so there were some
10 things that I held back --

11       THE COURT: Uh-huh.

12       THE DEFENDANT: -- when I initially spoke with the
13 probation officers and the other people that interviewed me.
14 Because I felt that, if I would go into all of that stuff,
15 maybe it would shed a bad light when it came time for my
16 sentencing.

17    But, after I studied and looked into things a little bit
18 more, then, by me saying it, it's not going to affect the time
19 or nothing like that, that I get. But I didn't want to paint a
20 picture of myself as being a bad individual by saying --

21       THE COURT: You withheld some things from the
22 officers?

23       THE DEFENDANT: In the beginning, I did. Once I
24 spoke with them again, I shared things with them and let them
25 know that I did have a problem with it. And I also sought

1 treatment in the world. I don't know if they was able to check
2 into it and verify it, but I tried to go to -- well, I went --
3 I went to Simon & Simon, which is -- it's an outpatient deal
4 that they have for people that have drug problems.
5      But I ended up going through a violation; and, so, I
6 didn't get a chance to complete that program. But I was
7 involved in it when I went through my violation.
8           MR. FARESE: Thank you. Your Honor, we'd ask the
9 Court to accept the 11(c)(1)(C) plea agreement. We think it's
10 justified in this case. Thank you.
11          THE COURT: All right.
12      Did you have anything to say, Mr. McGee?
13          MR. MCGEE: No, Your Honor.
14          THE COURT: All right. Well, I'm about to state the
15 reasons for your sentence, Mr. Aubry. I think I have ruled on
16 the -- all of the objections made to your Presentence
17 Investigation Report.
18      And I want to say, in those regards, that I appreciate the
19 probation service giving me full and accurate information; that
20 it is apparent that this defendant has not always been truthful
21 with the officers.
22      But, based on the fact that the defendant had entered into
23 an agreement with the Government, I'm going to accept the terms
24 of that agreement. So the reason that you're going to get the
25 sentence you're getting is because your attorney did a good job

1  for you, and the Government did a good job; and the probation
2  officers have done a good job.  They have been very honest at
3  every stage of the proceedings.
4      But, based upon the rulings that I have made, I will
5  otherwise adopt the Presentence Investigation Report with those
6  changes.  I find that no count of conviction carries a
7  mandatory minimum sentence.
8      Under the statute, he could receive, on each count, up to
9  20 years' imprisonment; under Count 1, up to a million-dollar
10 fine; under Count 2, a half-a-million-dollar fine; on Count 1,
11 3 years to life, supervision; on Count 2, 0 to 3 years'
12 supervision; and a $100 special assessment on each count.
13     As I understand the guideline range now, he's under a
14 total offense level of 29, a criminal history category of Roman
15 Numeral VI.  The guidelines provide for a range of 151 to
16 188 months and a supervised release range, under Count 1, of
17 3 years and, under Count 2, 1 to 3 years; a fine of 15,000 up
18 to 1,500,000 dollars.  The fine will be waived because of his
19 inability to pay.
20     I have considered the advisory guideline range, the
21 statutory penalties, and the sentencing factors enumerated in
22 18 U.S.C. Section 3553(a)(2).  I am going to -- is it a
23 variance or a departure, Mr. Cole?
24          MR. COLE:  A variance, Your Honor.
25          THE COURT:  I am going to vary the sentence in this

1  case based upon the binding plea agreement that was entered

2  into between the defendant and the Government.  I don't want

3  you, Mr. Aubry, to think that I don't understand what's going

4  on.  Because I have reviewed your record.

5       In 2001, you were convicted of distributing more than

6  50 grams of cocaine in Beaumont, Texas.  You originally was

7  sentenced to 151 months; you got that reduced to 121 months.

8  And, in 2011, you were released from custody.

9       2009, you were found guilty of possession, with the intent

10 to distribute, in Beaumont Texas.  I think that ran consecutive

11 with the other one.  You had other charges, 1999, charges

12 dismissed.  Pending charges, 2013 in Beaumont, Texas, delivery

13 of a controlled substance.  That's just pending.  That's all I

14 have.

15      Evading arrest in 2015.  That's a pending charge in

16 Nacogdoches, Texas.  2016, you deny this; but there are pending

17 charges that tend to indicate that you're involved in

18 possession, with the intent to distribute, heroin, cocaine

19 hydrochloride, and cocaine base in Birmingham, Alabama.

20      I'm not -- we're not applying this -- these charges

21 against you in this case, but I want you to know that it's not

22 a very favorable record.  It's something you ought to look at

23 to see who you really are.

24      Then your work history I can only describe as not

25 impressive.  And you have outstanding family.  I've heard from

Case: 3:15-cr-00048-MPM-RP Doc #: 186 Filed: 05/04/17 17 of 20 PageID #: 719

17

members of your family and seen the letters, including I got the letter that you wrote me. I'd forgotten all about that matter until he brought it to my attention, Mr. Farese, dealing with another inmate.

So it seems like you -- I don't know. You need to learn how to handle yourself a little differently than you have. And had you not entered into that binding agreement with the Government, you'd probably be getting a lot more time than you're going to get. And I think you probably earned it.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Timothy Aubry, is hereby committed to the custody of the Bureau of Prisons to be imprisoned for a term of 60 months. That's 60 months on Count 1 of the indictment and 60 months on Count 2, to be run concurrently. So that's a total term of imprisonment of 60 months.

Upon release from imprisonment, the defendant shall be placed on supervised release for a term of 3 years. That's on each count, to run concurrently. He shall comply with the following mandatory conditions: He must cooperate in the collection of DNA as directed.

He shall comply with the standard conditions that have been adopted by this Court and the following special conditions: He shall participate in a program of testing and treatment for substance abuse as directed.

1        He shall submit his person, property, house, residence,
2  vehicle, papers, computers or telephones or other electronic
3  communications or data storage devices or media or office to a
4  search conducted by the U.S. Probation Officer.  Failure to
5  submit to a search may be grounds for revocation of release.
6        The defendant shall warn any other occupants that the
7  premises may be subject to searches pursuant to this condition.
8  An officer may conduct a search pursuant to this condition only
9  when reasonable suspicion exists that the defendant has
10 violated a condition of his supervision.  Any search must be
11 conducted at a reasonable time and in a reasonable manner.
12       No fine is being ordered due to his inability to pay.
13 However, he shall pay a special assessment of $100 for each
14 count of conviction for a total of $200, which is due
15 immediately.  He shall be ineligible for all federal benefits
16 because this is his third or subsequent conviction for
17 distribution of a controlled substance.
18       You have the right to appeal any sentence imposed
19 illegally or as a result of a miscalculation of the guidelines
20 or outside the guideline range or one that is plainly
21 unreasonable.  If you are unable to pay for the cost of an
22 appeal, you may request the Court to waive such cost and/or
23 appoint you an attorney.
24       Do you understand the sentence that I have just stated?
25            THE DEFENDANT:  Yes, Your Honor.

1            THE COURT:  Is there anything further from the
2    Government?
3            MR. MCGEE:  Yes, Your Honor.  The Government would
4    move to dismiss Count 14 as it pertains to this defendant.
5            THE COURT:  All right.  That'll be granted.
6        Anything further from the defense?
7            MR. FARESE:  Yes, sir, Your Honor.  The defendant has
8    requested that I request of the Court that you recommend the
9    institution in Speegleville, Texas where -- which is close to
10   his family.
11           THE COURT:  I will put that request in.  And, as you
12   know, I can't order them to put him anywhere; but we'll put
13   that request in.  I'm going to also order him into the 500-hour
14   drug treatment program if he qualifies.  Anything further?
15           MR. FARESE:  No, sir, Your Honor.  Thank you.
16           THE COURT:  All right.  You're remanded to the
17   custody of the U.S. Marshals Service.  Court will be in recess.
18           THE DEFENDANT:  Thank you.
19           MR. FARESE:  Thank you.
20           THE COURT:  Thank you.
21              (Proceedings concluded at 12:07 p.m.)
22
23
24
25

```
 1                CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4           I, Rita Davis Young, Federal Official Realtime

 5  Court Reporter, in and for the United States District Court for

 6  the Northern District of Mississippi, do hereby certify that

 7  pursuant to Section 753, Title 28, United States Code that the

 8  foregoing is a true and correct transcript of the

 9  stenographically reported proceedings held in the

10  above-entitled matter; and that the transcript page format is

11  in conformance with the regulations of the Judicial Conference

12  of the United States.

13

14

15                    Dated this 4th day of May, 2017.

16

17

18

19                    /s/ Rita Davis Young
                      RITA DAVIS YOUNG, FCRR, RPR, CSR #1626
20                    Federal Official Court Reporter

21

22

23

24

25
```